UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
(FILED ELECTRONICALLY)


CIVIL ACTION NO. __5:20-cv-146-TBR_____

UNITED STATES OF AMERICA                                      PLAINTIFF


vs.


NANCY BLACK,                                                  DEFENDANTS
As heir of Nancy Smith, also known as
Nancy Kay Smith and Nancy Workman
1001 W. Harrison Road
Murphysboro, IL 62966-4921

MIKE SWAFFORD
As possible husband of Nancy Black
1001 W. Harrison Road
Murphysboro, IL 62966-4921

ANY UNKNOWN SPOUSE OF NANCY BLACK
Serve: Warning Order Attorney

PURCHASE AREA HOUSING CORPORATION
Serve: Jennifer Beck Walker, Registered Agent
P. O. Box 588, 1002 Medical Dr.
Mayfield, KY 42066

ANY UNKNOWN SPOUSE OF NANCY K. SMITH
Serve: Warning Order Attorney

ANY UNKNOWN HEIRS AND SPOUSES
OF HEIRS OF NANCY K. SMITH
Serve: Warning Order Attorney


**COMPLAINT FOR FORECLOSURE**

     1.      Plaintiff, the United States of America, states as follows:

2.      This is a mortgage foreclosure action brought by the United States of America on behalf of its agency, the United States Department of Agriculture Rural Housing Service also known as Rural Development and at one time known as the Farmers Home Administration (hereinafter collectively "RHS").  Given that the original borrower has passed away, the object of this suit is merely to see that the property securing the loan is sold and that proceeds are used to reduce the debt balance.  The United States is naming heirs as defendants in accordance with Kentucky property law and to provide them notice of the foreclosure, but not to make individuals liable for the borrower's personal debt.

3.      Jurisdiction arises under 28 U.S.C. § 1345.  Venue is proper in this judicial division, where the subject property is located.

4.      The United States of America, through RHS, is the holder of a promissory note ("the 1986 Note") executed for value on November 12, 1986, by Sandra C. Fristoe, a single person, not a defendant herein.  The principal amount of the Note was $24,000.00, bearing interest at the rate of 9.5 percent per annum, and payable in monthly installments as specified in the Note.

5.      The 1986 Note is secured by a Real Estate Mortgage (the "1986 Mortgage") recorded on November 12, 1986, in Mortgage Book 291, Page 627, in the Office of the Clerk of Graves County, Kentucky.  Through the 1986 Mortgage, Sandra C. Fristoe, unmarried, granted the United States through RHS a mortgage lien against the real property including all improvements, fixtures and appurtenances thereto at 1001 Windsor Drive, Mayfield, Graves County, Kentucky (the "Property").  A copy of the 1986 Mortgage is attached as **Exhibit A** and incorporated by reference as if set forth fully herein.

6.      The Property securing the Note and Mortgage is described in more detail as follows:

Lot No. 1, Block "B" of the Southland Subdivision as shown by plat of said subdivision of record in Plat Book 3, Page 35 (Cabinet B, Slide 104), Graves County Court Clerk's Office.

BEING the same property conveyed to Nancy Smith and husband, Alex J. Smith, by Deed dated May 8, 1990 and recorded May 8, 1990, of record in Deed Book 325, Page 571, in the Office of the County Clerk of Graves County. Alex J. Smith died in December 1995, and all title vested in Nancy Smith pursuant to the deed's survivorship clause.

7.      On May 8, 1990, Nancy Smith, also known as Nancy Kay Smith and Nancy Workman, and her then spouse Alex J. Smith, both now deceased and not defendants herein, signed an assumption agreement, which is attached as **Exhibit B** and incorporated by reference as though set forth fully herein. Through the Assumption Agreement, Nancy Smith and Alex J. Smith assumed liability under the 1986 Note and 1986 Mortgage.

8.      The United States of America, through RHS, is the holder of a promissory note ("the 1990 Note") executed for value on May 8, 1990 by Nancy Smith and Alex J. Smith. The principal amount of the Note was $5,560.00, bearing interest at the rate of 8.75 percent per annum, and payable in monthly installments as specified in the Note. A copy of the 1990 Note is attached as **Exhibit C** and incorporated by reference as if set forth fully herein.

9.      The 1990 Note is secured by a Real Estate Mortgage (the "1990 Mortgage") recorded on May 8, 1990, in Mortgage Book 317, Page 669, in the Office of the Clerk of Graves County, Kentucky. Through the 1990 Mortgage, Nancy Smith (also known as Nancy Kay Smith) and Alex J. Smith, her husband, granted the United States through RHS a mortgage lien against the Property (previously defined herein). A copy of the 1990 Mortgage is attached as **Exhibit D** and incorporated by reference as if set forth fully herein.

10.     To receive subsidies on the loan, Nancy Smith and Alex J. Smith signed a Subsidy Repayment Agreement authorizing RHS to recapture, upon transfer of title or non-occupancy of the Property, any subsidies granted to them by RHS. A copy of the Subsidy

Repayment Agreement is attached as **Exhibit E** and incorporated by reference as if set forth fully herein.

11.     Through the Assumption Agreement and the 1990 Note and 1990 Mortgage, Nancy Smith and Alex J. Smith, husband and wife with right of survivorship, acquired the Property at 1001 Windsor Drive from Sandra C. Fristoe, a single person, by Deed dated May 8, 1990, of record in Deed Book 325, Page 571 in the Office of the Graves County Clerk.   This Deed is attached as **Exhibit F**.

12.     The Assumption Agreement was subject to a Reamortization and/or Deferral Agreement dated July 8, 1994, in the principal amount of $24,000.95, and another Reamortization and/or Deferral Agreement dated March 8, 1996, in the principal sum of $23,929.23.

13.     Nancy Smith failed to make required payments when due and the Notes, Mortgages and Assumption Agreement, and these are in default.

14.     RHS has, in accordance with the loan documents, accelerated the loan and declared the entire principal balance, together with all accrued and unpaid interest and all other sums due under the loan documents, to be due and payable.  Further, RHS sent notice of the default, acceleration of the loan, intent to proceed with foreclosure, and opportunity for administrative review.

15.     In accordance with the loan documents, the United States on behalf of RHS is entitled to enforce the Mortgage through this foreclosure action and to have the Property sold to pay all amounts due, together with the costs and expenses of this action.

16.     As of February 12, 2020, RHS was owed the following amounts for the 1986 Note assumed by the Borrowers through the Assumption Agreement: the unpaid principal balance is $15,074.47 with accrued interest of $8,214.04, with a total subsidy granted of

4

$29,605.07,  and fees assessed of $39,249.71,  for a total unpaid  balance of $92,143.29.   Interest is accruing  on the unpaid  principal  balance at the rate of $11.2407  per day after February 12, 2020.

17.     As of February 12, 2020, RHS was owed the following  amounts for the 1990 Note signed by the Borrowers: the unpaid principal  balance is unpaid principal  balance on the Note is $3,397.71  with accrued interest of $1,851.40,  and a total subsidy  granted of $7,340.00, for a total unpaid  balance of $12,589.11.   Interest is accruing  on the unpaid principal  balance at the rate of $0.8145  per day after February 12, 2020.

18.     The Property is indivisible  and cannot be divided  without materially  impairing  its value and the value of RHS's lien thereon.

19.     Alex J. Smith  passed away on December 16, 1995.  Upon his death, his title, right and interest in the Property vested in Nancy Smith pursuant to the right of survivorship  clause contained in the deed through which the Smiths derived title.

20.     Nancy Smith also known as Nancy Kay Smith died on November 20, 2013. (**Exhibit G**: Death Certificate).

21.     Upon information  and belief, Nancy Kay Smith died intestate.  Plaintiff made a search of probate records in Kentucky and found no evidence that an estate has been filed in the name of Nancy Smith.

22.     Upon Ms. Smith's death intestate, all of her right, title and interest in the Property vested in her heirs at law.  KRS 391.010.

23.     Upon information  and belief, Nancy Kay Smith was not survived by any children or their descendants.  Moreover, upon information  and belief, Nancy Kay Smith was not survived by her parents.  **Exhibit H**: Obituary.

24.     The United States names **Nancy Black,** half-sister and apparent statutory heir of Nancy Smith, as a Defendant to allow this Defendant to assert whatever right,  title or claim  she

may have in or to the Property or to the proceeds from the sale thereof, or be forever barred. This Defendant's interest, if any, is inferior to the rights of the United States.

25. The United States names **Mike Swafford**, as possible husband of Nancy Black, as a Defendant to allow this Defendant to assert whatever right, title or claim he may have in or to the Property or to the proceeds from the sale thereof, or be forever barred. This Defendant's interest, if any, is inferior to the rights of the United States.

26. The United States names **Any Unknown Spouse of Nancy Black** as a Defendant to allow this Defendant to assert whatever right, title or claim they may have in or to the Property or to the proceeds from the sale thereof, or be forever barred. This Defendant's interest, if any, is inferior to the rights of the United States.

27. Defendant **Purchase Area Housing Corporation** may claim an interest in the Property by virtue of an Equity Secured Loan Mortgage executed by Nancy Smith and Robert Glen Workman on May 22, 1998, and recorded on June 2, 1998 in Mortgage Book 418, Page 140, in the Office of the Clerk of Graves County, Kentucky. A copy of such lien is attached as **Exhibit I**. The United States calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

28. Defendant **Purchase Area Housing Corporation** may claim an interest in the Property by virtue of a Mortgage executed by Nancy Smith and husband Robert Workman dated May 25, 1999, and recorded June 14, 1999 in Mortgage Book 438, Page 682, in the Office of the Clerk of Graves County, Kentucky. A copy of such lien is attached as **Exhibit J**. The United States calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

29. The United States names **Any Unknown Spouse of Nancy Smith,** also known as Nancy Kay Smith and Nancy Workman, as a Defendant to allow this Defendant to assert

6

whatever right, title or claim they may have in or to the Property or to the proceeds from the sale thereof, or be forever barred. This Defendant's interest, if any, is inferior to the rights of the United States.

30. The United States names **Any Unknown Heirs and Spouses of Heirs of Nancy Smith,** also known as Nancy Kay Smith and Nancy Workman, as a Defendant to allow this Defendant to assert whatever right, title or claim they may have in or to the Property or to the proceeds from the sale thereof, or be forever barred. This Defendant's interest, if any, is inferior to the rights of the United States.

31. There are no other persons or entities purporting to have an interest in the Property known to the Plaintiff.

32. WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands:

a. *In rem* judgment against the interests of the Defendants in the Property as to the amounts owed on the 1986 Note and the 1990 Note as stated herein, plus pre and post-judgment interest as allowed by law as well as any additional costs, disbursements and expenses advanced by the United States;

b. That the United States be adjudged a lien on the Property, prior and superior to any and all other liens, claims, interests and demands, except liens for unpaid real estate ad valorem taxes;

c. That the United States' lien be enforced and the Property be sold in accordance with 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem real property taxes;

d.      That the proceeds from the sale be applied first to the costs of this action, second

to any ad valorem real property taxes, if any, third to the satisfaction of the debt, interest, costs

and fees due the United States, with the balance remaining to be distributed to the parties as their

liens or interests may appear;

e.      That the Property be adjudged indivisible and be sold as a whole; and

f.      That the United States receive any and all other lawful relief to which it may be

entitled.

UNITED STATES OF AMERICA

RUSSELL M. COLEMAN
United States Attorney


s/ William F. Campbell
William F. Campbell
Katherine A. Bell
Assistant United States Attorneys
717 West Broadway
Louisville, Kentucky 40202
Phone: 502/582-5911
Fax:   502/625-7110
bill.campbell@usdoj.gov
Katherine.bell@usdoj.gov

627

USDA-FmHA
Form FmHA 427-1 KY
(Rev. 8-14-81)

*Position 5*

**ADVICE # 20409**

REAL ESTATE MORTGAGE FOR KENTUCKY

THIS MORTGAGE is made and entered into by

------------------ SANDRA C. FRISTOE, a single person, ----------------------

residing in ---------------------- Graves ---------------------- County, Kentucky, whose post office

address is ___ 1001 Windsor Drive, Mayfield ------------------------------, Kentucky, 42066,
herein called "Borrower," and:

WHEREAS Borrower is indebted to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| November 12, 1986 | $24,000.00 | 9.5% | November 12, 2019 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument will be increased after 3 years, as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949 or any other statute administered by the Farmers Home Administration.

And it is the purpose and intention of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower.

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby sell, convey, and assign, with general warranty unto the Government the following property situated in the State of Kentucky,

County(ies) of -------------------------- GRAVES --------------------------

Lot No. 1, Block "B" of the Southland Subdivision as shown by plat of said subdivision of record in Plat Book 3, Page 35, Cabinet B, Slide 104, Graves County Court Clerk's Office.

Being the same real estate conveyed to Sandra C. Fristoe, a single person, by deed from the United States of America, acting through the Administrator of the Farmers Home Administration, United States Department of Agriculture, by Robert W. Letton, Acting State Director, dated October 20, 1986, and of record in Deed Book 306, Page 414, in the Graves County Clerk's Office.

FmHA 427-1 KY (Rev. 8-14-81)

PLAINTIFF'S EXHIBIT A

being the same (or part of the same) land conveyed*

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harm-less the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Govern-ment, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the pre-servation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government as described in this instrument, with interest, shall be immediately due and pay-able by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Govern-ment determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

628



(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often–in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, a bankrupt, or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice or hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex or national origin.

(21)  This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(22)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at 333 Waller Avenue, Lexington, Kentucky 40504, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(23) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

Given under the hand(s) and seal(s) of Borrower this ___12th___ day of ___November___, 19_86_.

_Sandra C. Fristoe_ (SEAL)

SANDRA C. FRISTOE

_____ (SEAL)

STATE OF KENTUCKY }
COUNTY OF __GRAVES__ } ss:

Before me, __Phyllis Kaye Terry_____, a Notary Public in and for

the County of ___Graves___ personally appeared _____

Sandra C. Fristoe, a single person, xxx _____ xxxxxxxx
                            she
who acknowledged that they executed the foregoing instrument on the ___12th___

day of ___November___, 19_86_, as her free act and deed.

WITNESS my hand and official seal this ___12th___ day of ___November___, 19_88_.

(SEAL)                                      _Phyllis Kaye Terry_
My commission expires: __September 24, 1988__   State-at-Large, Kentucky       Notary Public

## PREPARER'S STATEMENT

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of

__Jeffrey R. Green_____
                    (name)

WEISENBERGER & GREEN, 423 East Broadway, P.O. Box 315, Mayfield, Kentucky, 42066
                                        (address)

_Jeffrey R. Green_
                                        (Signature)

## RECORDER'S CERTIFICATE

STATE OF KENTUCKY }
COUNTY OF __GRAVES__ } ss:

I, __Glen Bruce,_____, Clerk of the County Court for the County aforesaid, do certify

that the foregoing mortgage was on the ___12th___ day of ___November___, 19_86_, lodged for record

at _12:36_ o'clock _P._ M., in Mortgage Book _291_, Page _627_, whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this ___12th___ day of ___November___, 19_86_.

Clerk of __Graves___     _Glen Bruce_     County Court

By __D. Wilford_____, D.C.

_Mail_

U.S. GOVERNMENT PRINTING OFFICE 339-895

680

Form FmHA 1965-15
(Rev. 9-84)

U.S. Department of Agriculture
Farmers Home Administration

**ASSUMPTION AGREEMENT**
Single-Family Housing Loan(s)

☒ Sec. 502    ☐ Sec. 504
Terms:    ☒ Eligible
            ☐ Ineligible

Case Number:

This Agreement dated _____MAY 8_____ , 19 90 , is between the United States of America, acting through the Farmers Home Administration (herein called the Government), and ____NANCY SMITH AND Husband,____
____ALEX J. SMITH____
(herein called Borrower), whose mailing address is ____1001 WINDSOR DR., MAYFIELD, KY 42066____ ,

The Government is the holder of debt instrument(s) secured by the following described security instrument(s) executed by
____SANDRA C. FRISTOE, a single person____
Case Number _____ , on real property described therein which is located in _____GRAVES_____ County,
State of ____KENTUCKY____ :

| Type Instrument | Date Executed | Office Where Recorded | Book/Volume/ Document Number | Page Number |
|---|---|---|---|---|
| Real Estate Mtg. | 11/12/86 | Graves Co. Ct. Clerk | 291 | 627 |
|  |  |  |  |  |
|  |  |  |  |  |

In consideration of the assumption of indebtedness as herein provided and the Government's consent to this assumption and related conveyance of the security property, if applicable, it is agreed as follows:

1. Borrower hereby assumes liability for and agrees to pay to the order of the Government at the office of the Farmers Home Administration shown below (or other location as may later be specified) the principal sum of ____TWENTY-TWO THOUSAND SIX HUNDRED NINETY-EIGHT AND 55/100 --------------------------------------------------------------------dollars ($ 22,698.55 ---------------------------------------------------------) plus interest at the rate of ____EIGHT AND THREE-FOURTHS----------------percent ( 8.75 ------- %) per annum, payable in installments as follows:

$ 176.00 _____ on ____JUNE 8____ ; 19 90 , and

$ 176.00 _____ thereafter on the ____8TH____ of each ____MONTH____
until the principal and interest are fully paid, except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable ____Thirty-three --------------- ( 33---- ) years from the date of this Agreement.

2. Payments of principal and interest shall be applied in accordance with Farmers Home Administration's accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with Farmers Home Administration regulations in effect when a late charge is assessed.

3. The provisions of the debt instrument(s) hereby assumed shall, except as modified herein, remain in full force and effect, and Borrower hereby assumes the obligations of and agrees to comply with all covenants, agreements, and conditions contained in said instrument(s), as modified herein, as though Borrower had executed them as of the date thereof as principal obligor(s).

4. Provisions of the debt and security instrument(s) which require that the borrower occupy the FmHA-financed dwelling or graduate to another credit source do not apply to assumption on ineligible terms.

5. This Agreement is subject to present regulations of the Farmers Home Administration and to its future regulations which are not inconsistent with the express provisions hereof.

UNITED STATES OF AMERICA

By ____Carter D. Russell____
____CARTER D. RUSSELL____
____County Supervisor____
FARMERS HOME ADMINISTRATION *(Title)*
FmHA County Office Address: ____Rt. #8, Old Jimtown Rd., Mayfield, KY   42066____
**ORIGINAL - COUNTY OFFICE LOCKED FILE**

____NANCY SMITH____ *Nancy Smith*
*Borrower*
____ALEX J. SMITH____ *Alex J Smith*
*Borrower*
A Reamortization and/or Deferral Agreement dated
July 8, 1994, in the principal sum of $24,000.95,
has been given to modify the payment schedule of
this note.

*Position 2*

PLAINTIFF'S
EXHIBIT

B

A Reamortization and/or Deferral Agreement dated March 8, 1996, in the principal sum of $23,929.23, has been given to modify the payment schedule of this note.

USDA-FmHA
Form FmHA 1940-16
(Rev. 8/87)

### PROMISSORY NOTE

| TYPE OF LOAN |
|---|
| RH 502 |

| STATE | KENTUCKY |
|---|---|
| COUNTY | GRAVES |
| CASE NO. | ▆▆▆▆▆ |

Date _____ **MAY 8** _____, 19 **90**

FOR VALUE RECEIVED, the undersigned (whether one or more persons; herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration,

United States Department of Agriculture, (herein called the "Government") at its office in _____

———————————— **MAYFIELD, KENTUCKY** ————————————

THE PRINCIPAL SUM OF ____ **FIVE THOUSAND FIVE HUNDRED SIXTY AND 00/100** ————

DOLLARS ($ **5,560.00** ————————————————), plus INTEREST on the UNPAID PRINCIPAL of

**EIGHT AND THREE-** **QUARTERS** PERCENT ( **8.75** %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☐ I.   Principal and Interest payments shall be deferred. The interest accrued to _____, 19____

shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in _____ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of

such new Principal herein $_____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II.   Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____

of each _____ beginning on _____, 19____, through _____, 19____,

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below;

☒ III.   Payments shall not be deferred. Principal and Interest shall be paid in _____ **396** _____ installments as indicated in the box below:

| | |
|---|---|
| $ **43.00** _____ on _____ **JUNE 8** _____, 19 **90**, and |
| $ **43.00** _____ thereafter on the **8TH DAY** of each **MONTH** |

until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness

evidenced hereby, if not sooner paid, shall be due and PAYABLE **THIRTY-THREE** ( **33** ) YEARS from the **DATE** of this **NOTE**. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

*Position 2*

FmHA 1940

PLAINTIFF'S EXHIBIT

C

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and notice are hereby waived.

*Nancy Smith*
NANCY SMITH _____ (BORROWER)          (SEAL)

*Alex J. S.____*
ALEX J. SMITH _____ (SPOUSE)          (SEAL)

1001 WINDSOR DRIVE

MAYFIELD, KENTUCKY  42066

| _____ | | | | | |

### RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ | |

A Reamortization and/or Deferral Agreement dated July 8, 1994, in the principal sum of $5,867.66, has been given to modify the payment schedule of this note.

A Reamortization and/or Deferral Agreement dated March 8, 1996, in the principal sum of $5,847.68, has been given to modify the payment schedule of this note.

☆ U.S. Government Printing Office: 1987—723-431/81816

Position 2

FmHA 1940-16 (Rev. 8/87)

*Position 5*

USDA-FmHA
Form FmHA 427-1 KY
(Rev. 10-89)

# REAL ESTATE MORTGAGE FOR KENTUCKY

THIS MORTGAGE is made and entered into by _____

————————— NANCY SMITH and husband, ALEX J. SMITH, —————————

residing in ——————————— Graves ——————————— County, Kentucky, whose post office

address is __1001 Windsor Drive,__ ——————————— Mayfield _____ , Kentucky__42066__ ,
herein called "Borrower," and:

WHEREAS Borrower is indebted to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| May 8, 1990 | $ 22,698.55 (Assumption) | 8.75% | May 8, 2023 |
| May 8, 1990 | $ 5,560.00 | 8.75% | May 8, 2023 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949 or any other statute administered by the Farmers Home Adminstration.

And it is the purpose and intention of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower.

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a, or any amounts due under any Shared Appreciation Agreement/Recapture Agreement entered into pursuant to 7 U.S.C. 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby sell, convey, and assign, with general warranty, unto the Government the following property situated in the State of Kentucky, —————————— :

County(ies) of __Graves__

MAY 1 0 1990        FmHA 427

PLAINTIFF'S
EXHIBIT

D

Lot No. 1, Block "B" of the Southland Subdivision as shown by plat of said subdivision of record in Plat Book 3, Page 35 (Cabinet B, Slide 104), Graves County Court Clerk's Office.

Being the same real estate conveyed to Nancy Smith and husband, Alex J. Smith, by deed from Sandra C.Fristoe, a single person, dated May 8, 1990, and of record in Deed Book **325**, Page **571**, in the Graves County Clerk's Office.

**"Being the same property described in a mortgage granted to the United States of America, acting through the Farmers Home Administration dated November 12, 1986, executed by Sandra C. Fristoe, a single person, recorded in Mortgage Book 291, Page 627, Graves County Clerk's Office. The note has been modified by an Assumption AGreement dated May 8, 1990, and executed by the mortgagors herein."**

being the same (or part of the same) land conveyed*

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest there-in-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government as described in this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)   To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)   To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)   To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe, and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)   To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government--whether once or often--in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex or national origin.

(21)  Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22)  This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(23)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at 333 Waller Avenue, Lexington, Kentucky 40504, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24)  If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

Given under the hand(s) and seal(s) of Borrower this _____ 8th _____ day of _____ May _____, 19 90.

_____ (SEAL)
Nancy Smith

_____ (SEAL)
Alex J. Smith

STATE OF KENTUCKY
                                    } ss:
COUNTY OF _____ Graves _____

Before me, _____ Barbara Suthard _____, a Notary Public in and for

the County of State-at-Large, Kentucky _____ personally appeared _____ Nancy Smith

_____ and _____ Alex J. Smith, her husband _____,

who acknowledged that they executed the foregoing instrument on the _____ 8th _____

day of _____ May _____, 19 90, as their free act and deed.

WITNESS my hand and official seal this _____ 8th _____ day of _____ May _____, 19 90

_____
(SEAL)                          State-at-Large, Kentucky          Notary Public
My commission expires: _____ Aug. 21, 1990 _____

## PREPARER'S STATEMENT

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of

Jeffrey R. Green, Attorney at Law
                        *(name)*

WEISENBERGER & GREEN, 423 East Broadway, P.O. Box 315, Mayfield, Kentucky  42066
                        *(address)*

_____
                        *(Signature)*

## RECORDER'S CERTIFICATE

STATE OF KENTUCKY
                                    } ss:
COUNTY OF _____ GRAVES _____

I, _____ Glen Bruce _____, Clerk of the County Court for the County aforesaid, do certify

that the foregoing mortgage was on the _____ 8th _____ day of _____ May _____, 19 90, lodged for record

at 12:41 o'clock P. M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this _____ 8th _____ day of _____ May _____ 19 90

Mortgage Book 317

Page 669

_____
Clerk of _____ Graves _____ County Court

By _____, D.C.

Jeff

FmHA Instruction 1951-I
Exhibit A

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

Subsidy Repayment Agreement

Assumption

Date of Note ___5/8/90___ Amount of Note $22,698.55 Date of mortgage ___5/8/90___

Date of Note ___5/8/90___ Amount of Note $5,560.00 Date of mortgage ___5/8/90___

Type of assistance:                    1. Interest credit /xx/
                                       2. Homeownership Assistance
                                          Program /    /

Address of Property:   1001 Windsor Dr.

                       Mayfield, KY  42066

BORROWER:  Nancy Smith

CO-BORROWER:  Alex J. Smith

1    This agreement entered into pursuant to 7 CFR 1951-I, between the United
States of America, acting through the Farmers Home Administration (FmHA)
(herein called "the Government") pursuant to section 521 of Title V of the
Housing Act of 1949 and the borrower(s) and the borrower(s) whose name(s) and address(es) appears
above (herein sometimes referred to as "borrower"), supplements the note(s)
from borrower to the Government as described above, and any promissory
note(s) for loans made to borrower in the future by the Government.
Such future notes, when executed, will be listed below the signature line
of this Subsidy Repayment Agreement.

2    I (we) agree to the conditions set forth in this agreement for the
repayment of the subsidy granted me (us) in the form of interest credits
or Homeownership Assistance Program (HOAP) subsidy (hereinafter called
"subsidy").

3    I (we) agree that the real property described in the mortgage(s)
listed above is pledged as security for repayment of the subsidy received
or to be received.  I (we) agree that the subsidy is due and payable upon
the transfer of title or non-occupancy of the property by me (us).  I
(we) understand that the real estate securing the loan(s) is the only
security for the subsidy received.  I (we) further understand that I (we)
will not be required to repay any of the subsidy from other than the value
(as determined by the Government) of the real estate, mortgaged by myself
(ourselves) in order to obtain a Section 502 Rural Housing (RH) loan.

(9-27-79)   SPECIAL PN                    MAY 0 8 1990

PLAINTIFF'S
EXHIBIT

E

FmHA Instruction 1951-I
Exhibit A
Page 2

4    I (we) understand that so long as I (we) continue to own the property
and occupy the dwelling as my (our) residence, I (we) may repay the principal
and interest owed on the loan and defer repaying the subsidy amount until
title to the property is conveyed or the dwelling is no longer occupied by
me (us). If such a request is made, the amount of subsidy to be repaid
will be determined when the principal and interest balance is paid. The
mortgage securing the FmHA RH loan(s) will not be released of record until
the total amount owed the Government has been repaid.

5    I (we) agree that Paragraph 6 of this agreement is null and
void should the property described in the mortgage(s) be voluntarily
conveyed to the Government or liquidated by foreclosure.

6    When the debt is satisfied by other than voluntary conveyance of the
property to the Government or by foreclosure, I (we) agree that sale
proceeds will be divided between the Government and me (us) in the
following order:

     (a)  Unpaid balance of loans secured by a prior mortgage as well as
     real estate taxes and assessments levied against the property which
     are due will be paid.

     (b)  Unpaid principal and interest owed on FmHA RH loans for the
     property and advances made by FmHA which were not subsidy and are
     still due and payable will be paid to the Government.

     (c)  I (we) will receive from the sale proceeds actual expenses
     incurred by me (us) necessary to sell the property. These may include
     sales commissions or advertising cost, appraisal fees, legal and
     related costs such as deed preparation and transfer taxes. Expenses
     incurred by me (us) in preparing the property for sale are not allowed
     unless authorized by the Government prior to incurring such expenses.
     Such expenses will be authorized only when FmHA determines such expenses
     are necessary to sell the property, or will likely result in a return
     greater than the expense being incurred.

     (d)  I (we) will receive the amount of principal paid off on the
     loan calculated at the promissory note interest rate.

     (e)  Any principal reduction attributed to subsidized interest
     calculations will be paid to the Government.

     (f)  I (we) will receive my original equity which is the difference
     between the market value of the security, as determined by the
     FmHA appraisal at the time the first loan subject to recapture of
     subsidy was made, and the amount of the FmHA loan(s) and any
     prior lien. This amount is $1,740.00        and represents
     .058        percent of the market value of the security. (The

FmHA Instruction 1951-I
Exhibit A
Page 3

percent is determined by dividing my (our) original equity by
the market value of the security when the loan was closed.)  The
dollar amounts and percent will be entered at the time this agreement
is signed by me (us) and will be part of this agreement.

(g)  The remaining balance, after the payments described in (a) thru (f)
above have been paid is called <u>value appreciation</u>.  The amount of
value appreciation to be paid to the Government, in repayment or
the subsidy granted, is the lesser of (1) the full amount of the subsidy or
(2) an amount determined by multiplying the value appreciation by the
appropriate factor in the following table.

Average interest rate paid by me (us)

| No. of Months the Loan was Outstanding | 1% or Less | 1.1 to 2% | 2.1 to 3% | 3.1 to 4% | 4.1 to 5% | 5.1 to 6% | 6.1 to 7% | 7.1 or greater |
|---|---|---|---|---|---|---|---|---|
| 0 to 59 | .78 | .68 | .60 | .51 | .44 | .32 | .22 | .11 |
| 60 to 119 | .75 | .66 | .58 | .49 | .42 | .31 | .21 | .11 |
| 120 to 179 | .73 | .63 | .56 | .48 | .40 | .30 | .20 | .10 |
| 180 to 239 | .65 | .56 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 to 299 | .59 | .51 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 to 359 | .53 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 to 396 | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

(h)  I (we) will receive the amount of value appreciation less the
amount paid the Government as determined in (g) above.  I (we) will
also receive an additional amount in proportion to my original equity
by reducing the amount of value appreciation due to the Government by
the percent of my (our) original equity as shown in (f) above.

(i)  If I (we) am the recipient of HOAP, the amount of value appreciation
to be recaptured will be calculated as if I (we) had paid 1 percent
interest on the loan, unless the average interest rate paid by me (us)
was greater than 1 percent.  In such cases it will be determined based
on the average interest rate paid by me (us).

(j)  If this agreement is for a subsequent loan(s) only, the amount
of repayment determined in (g) above will be reduced by the following
percent:  n/a        .  This percent will be determined by dividing the
amount of the loan(s) subject to recapture by the total outstanding
RH debt.  This percentage will be entered at the time I (we) sign this
agreement.

(k)  If this agreement is for more than one loan that is subject to
recapture, the subsidy repayment computations will be based on the total
subsidy granted on all loans.

(9-27-79)  SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 4


7     When a FmHA RH loan is repaid by other than foreclosure, voluntary
conveyance, or sale of property, the amount of subsidy to be repaid the
Government will be determined in the same manner as described in paragraph
6 of this Exhibit but based on the appraised value determined by FmHA
instead of sales price.  In such cases, the subsidy due the Government
will remain a lien on the property until paid.  It must be paid upon non
occupancy, sale, or transfer of title to the property.

8     I (we) have read and agree to the provisions of this agreement.


_Nancy Smith_ _____     Borrower
NANCY SMITH

_Alex J. Smith_ _____     Co-Borrower
ALEX J. SMITH

    May 8, 1990
    Date signed


Accepted and Agreed to
By _Carter D. Russell_ _____     (FmHA Official)
    CARTER D. RUSSELL

    County Supervisor _____     (Title)


    May 8, 190
    Date


oOo

# WARRANTY DEED



For and in consideration of the sum of  TWENTY-FOUR THOUSAND AND 00/100 DOLLARS ($ 24,000.00) CASH
in hand paid, the receipt of which is hereby acknowledged, xxxd

I, SANDRA C. FRISTOE, a single person,

have sold and do hereby sell and convey with covenant of GENERAL WARRANTY, to

NANCY SMITH and husband, ALEX J. SMITH, jointly as life tenants with the
remainder in fee simple to the survivor of them,

(The address of the Grantees is 1001 Windsor Drive, Mayfield, Kentucky  42066)

the following described real estate lying in —— Mayfield, ——·—— Graves County, Kentucky, viz:

Lot No. 1, Block "B" of the Southland Subdivision as shown by plat of said subdivision
of record in Plat Book 3, Page 35 (Cabinet B, Slide 104), Graves County Court Clerk's
Office.

Being the same real estate conveyed to Sandra C. Fristoe, a single person, by deed
from the United States of America, acting through the Administrator of the Farmers
Home Administration, United States Department of Agriculture, by Robert W. Letton,
Acting State Director, dated October 20, 1986, and of record in Deed Book 306,
Page 414, in the Graves County Clerk's Office.

"This being the same real estate as described in a mortgage granted to the United States
of America, acting through the Farmers Home Administration, dated November 12, 1986,
executed by Sandra C. Fristoe, a single person, recorded in Mortgage Book 291, Page 627,
Graves County Clerk's Office. The note has been modified by an Assumption Agreement
dated May 8, 1990, and executed by the Grantees herein, namely, Nancy Smith and husband,
Alex J. Smith."

PLAINTIFF'S
EXHIBIT

F

TO HAVE AND TO HOLD the said real estate and the appurtenances thereunto belonging unto the said grantees..., their... heirs and assigns forever.

A lien being retained on the real estate herein conveyed to secure payment of the unpaid purchase price, which lien will be automatically released when the mortgage of record in Mortgage Book 291, Page 627, Graves County Clerk's Office, is released.

Words used herein in the singular shall, when appropriate, include the plural and the plural to mean the singular; also any gender used herein shall, when appropriate, be construed to mean and refer to any other gender.

IN WITNESS WHEREOF, We have hereunto set our hands, relinquished our respective rights to curtesy or dower and homestead exemptions in and to said real estate this the    8th    day of   May, 1990.

.......................................................          *Sandra C. Fristoe*
                                                          Sandra C. Fristoe

.......................................................          .......................................................

.......................................................          .......................................................

.......................................................          .......................................................

.......................................................          .......................................................

THIS DEED PREPARED BY:

*Jeffrey Tibbs*
OF WEISSENBERGER & GREEN
Attorneys at Law
Mayfield, Kentucky 42066

STATE OF KENTUCKY,  }
COUNTY OF GRAVES,  }  Sct.

I, ......the undersigned................, a notary public in and for the state and county aforesaid do certify that the foregoing deed was this day produced to me in my county and acknowledged before me by

———————— Sandra C. Fristoe, a single person, ————————

                     her
to be her/his free act and deed. Witness my hand this the    8th    day of    May, 1990.
My Commission expires
    Aug. 21, 1990

                              *Barbara Suthard*
                              Notary Public, Graves County, Kentucky
                              State-at-Large

STATE OF KENTUCKY
COUNTY OF GRAVES, SCT
    I, Glen Bruce, Clerk of the county in and for the State and County aforesaid do certify that this deed was lodged in my office for record on the    8th    day of    May, 1990, at    2:00    o'clock, duly taxed
$24.00    and the same and the foregoing and this certificate have been duly recorded in Deed Book    325, Page    571    in the Graves County Clerk's Office, this the    8th    day of    May, 1990
                              GLEN BRUCE, CLERK
                              BY  *D. Wilson*  DC

                              571

# COMMONWEALTH OF KENTUCKY

6056711

## REGISTRAR OF VITAL STATISTICS
### CERTIFIED COPY


*Kentucky UNBRIDLED SPIRIT*

**KENTUCKY CERTIFICATE OF DEATH**   116   201339479

Case #: E20131126005G

| | | |
|---|---|---|
| **1a. DECEDENT'S LEGAL NAME** (First, Middle, Last) (Include AKA's if any)<br>NANCY KAY SMITH | **1f. IF FEMALE, DECEDENT'S LAST NAME PRIOR TO FIRST MARRIAGE**<br>BLACK | **2. SEX**<br>FEMALE |

**3. ACTUAL OR PRESUMED DATE OF DEATH** (Mo/Day/Yr): November 20, 2013
**4. SOCIAL SECURITY NUMBER**: ███5978
**5a. AGE-LAST BIRTHDAY (Years)**: 48
**5b. UNDER 1 YEAR** Months Days
**5c. UNDER 1 DAY** Hours Minutes
**6. DATE OF BIRTH** (Mo/Day/Yr): ███
**7. COUNTY OF DEATH**: GRAVES

**8. PLACE OF DEATH** (Check only one)
HOSPITAL: ☐ Inpatient ☐ ER/Outpatient ☐ Dead on Arrival OTHER: ☐ Hospice Facility ☐ Nursing Home/Long Term Care Facility ☒ Residence ☐ Other (Specify)

**9. FACILITY NAME** (If not institution, give street and number): 1001 S. 12TH STREET
**10. CITY OR TOWN, STATE, AND ZIP CODE**: MAYFIELD, KY 42066

**11. BIRTHPLACE** (City and State or Foreign Country): MURFREESBORO, ILLINOIS
**12. MARITAL STATUS**: ☐ Married ☐ Widowed ☐ Never Married ☒ Married but Separated ☒ Divorced ☐ Unknown
**13. SURVIVING SPOUSE** (If wife, give name prior to first marriage):

**14. DECEDENT'S USUAL OCCUPATION** (Kind of work done during most of working life.) (Do not use retired): NURSE
**15. KIND OF BUSINESS/INDUSTRY**: MEDICAL
**16. WAS DECEDENT EVER IN U.S. ARMED FORCES?**: ☐ Yes ☒ No ☐ Unknown

**17a. RESIDENCE - State**: KENTUCKY
**17b. COUNTY**: GRAVES
**17c. CITY OR TOWN**: MAYFIELD
**17d. STREET AND NUMBER**: 1001 SOUTH 12TH STREET
**17e. ZIP CODE**: 42066
**17f. INSIDE CITY LIMITS?**: ☒ Yes ☐ No

**18. DECEDENT'S EDUCATION** (Check the box that best describes the highest degree or level of school completed at the time of death.)
☐ 8th Grade or Less
☐ 9th - 12th Grade, No Diploma
☐ High School Graduate or GED Completed
☐ Some College Credit but No Degree
☐ Associate Degree (e.g., AA, AS)
☐ Bachelor's Degree (e.g., BA, AB, BS)
☐ Master's Degree (e.g., MA, MS, MEng, MEd, MSW, MBA)
☐ Doctorate (e.g., PhD, EdD) or Professional Degree (e.g., MD, DDS, DVM, LLB, JD)

**19. DECEDENT OF HISPANIC ORIGIN?** (Check the box that best describes whether the decedent is Spanish/Hispanic/Latino. Check the "No" box if the decedent is not Spanish/Hispanic/Latino.)
☒ No, not Spanish/Hispanic/Latino
☐ Yes, Mexican, Mexican American, Chicano
☐ Yes, Puerto Rican
☐ Yes, Cuban
☐ Yes, other Spanish/Hispanic/Latino (Specify)

**20. DECEDENT'S RACE** (Check one or more races to indicate what the decedent considered himself or herself to be.)
☐ White
☐ Black or African American
☐ Native Hawaiian
☐ Asian Indian
☐ Chinese
☐ Filipino
☐ Japanese
☐ Korean
☐ Vietnamese
☐ Samoan
☐ Guamanian or Chamorro
☐ Other Pacific Islander (Specify)
☐ American Indian or Alaska Native (Name of the enrolled or principal tribe)
☐ Other (Specify)

**21. FATHER'S NAME** (First, Middle, Last): ARTHUR LEE BLACK
**22. MOTHER'S NAME PRIOR TO FIRST MARRIAGE** (First, Middle, Last): IRENE LEVADA HARRIS

**23a. INFORMANT'S NAME**: KENNETH SMITH
**23b. RELATIONSHIP TO DECEDENT**: EX-HUSBAND
**23c. MAILING ADDRESS** (Street and Number, City, State, Zip Code): 1011 SOUTH 12TH STREET, MAYFIELD, KY 42066

**24. METHOD OF DISPOSITION** (Check only one): ☐ Burial ☒ Cremation ☐ Donation ☐ Entombment ☐ Removal from State ☐ Other (Specify)
**25. PLACE OF DISPOSITION** (Name of cemetery, crematory, or other place): PURCHASE AREA CREMATION SERVICES
**26. LOCATION - City, Town, and State**: MURRAY, KY

**27. SIGNATURE OF FUNERAL SERVICE LICENSEE** (Or person acting as such): KIRK P. BYRN IV
**DATE SIGNED** (Mo/Day/Yr): 11/26/2013
**28. KY LICENSE NUMBER** (of licensee): 5720
**29. NAME AND COMPLETE ADDRESS OF FUNERAL FACILITY**: BYRN FUNERAL HOME, INC. 1020 PARIS ROAD MAYFIELD, KY 42066

**30. DATE PRONOUNCED DEAD** (Mo/Day/Yr): Nov. 20, 2013
**31. ACTUAL OR PRESUMED TIME OF DEATH**: 7:00 PM
**32. WAS MEDICAL EXAMINER OR CORONER CONTACTED?**: ☒ Yes ☐ No

**33. CAUSE OF DEATH**
PART I. Enter the chain of events – diseases, injuries, or complications – that caused the death. DO NOT ABBREVIATE. Enter only one cause on each line.
IMMEDIATE CAUSE (Final disease or condition resulting in death) → a. Cor Pulmonale
DUE TO (OR AS A CONSEQUENCE OF):
Sequentially list conditions, if any, leading to the cause listed on line a. b. Emphysema, pulmonary fibrosis, and Anthracosis
DUE TO (OR AS A CONSEQUENCE OF):
c. myocardial hypertrophy
DUE TO (OR AS A CONSEQUENCE OF):
Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST d. cirrhosis of liver

**Approximate Interval Between Onset and Death**

PART II. Enter other significant conditions contributing to death but not resulting in the underlying cause given in Part I

**34. MANNER OF DEATH**
☒ Natural ☐ Accident
☐ Homicide ☐ Pending Investigation
☐ Suicide ☐ Could not be Determined

**35. WAS AN AUTOPSY PERFORMED?**: ☒ Yes ☐ No
**36. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH?**: ☐ Yes ☐ No
**37. DID TOBACCO USE CONTRIBUTE TO DEATH?**: ☐ Yes ☐ Probably ☐ No ☒ Unknown
**38. IF FEMALE**: ☒ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Unknown if pregnant within past year ☐ Not pregnant, but pregnant 43 days to 1 year before death

**39. DATE OF INJURY** (Mo/Day/Yr) (Spell Month):
**40. TIME OF INJURY**:
**41. INJURY AT WORK?**: ☐ Yes ☐ No
**42. PLACE OF INJURY** (e.g., Decedent's home; construction site; restaurant; wooded area):
**43. IF TRANSPORTATION INJURY, SPECIFY**: ☐ Driver/Operator ☐ Pedestrian ☐ Passenger ☐ Other (Specify)

**44. DESCRIBE HOW INJURY OCCURRED**:
**45. LOCATION OF INJURY** (Street and Number, City or Town, State, Zip Code):

**46. TO BE COMPLETED BY CERTIFIER**: To the best of my knowledge, death occurred at the time, date, and place, and due to cause(s) and manner stated.
SIGNATURE: Leslee Pittman
**47. DATE CERTIFIED** (Mo/Day/Yr): 12-14-2013
**48. LICENSE NUMBER**: 1305
**49. TITLE OF CERTIFIER**: Deputy Coroner

**50. NAME, ADDRESS AND ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH (ITEM 33)**: Leslee Pittman 381 St Rt 381 Sedalia KY 42079

**51. REGISTRAR'S SIGNATURE**: Paul F. Royce
**52. DATE FILED** (Mo/Day/Yr): DEC 27 2013

FORM VS NO. 1-A (REVISED 07/2010)

This is to certify that this is a true and correct copy of the certificate of birth, death, marriage or divorce of the person and that the original certificate is registered at the Kentucky Office of Vital Statistics under the file number.

DATE ISSUED   AUG 11 2020

*Christina S. Stewart*
State Registrar



**PLAINTIFF'S EXHIBIT G**

DOCUMENT CONTAINS A WATERMARK – HOLD TO LIGHT TO VIEW

### Nancy Kay Smith | 1965 - 2013 | Obituary



**Nancy Kay Smith**

August 17, 1965 - November 20, 2013

Send Sympathy Gifts

Share this obituary

Sign Guestbook   |   Send Sympathy Card

Nancy Kay Smith 48, of Mayfield died Wednesday November 20, 2013 at her residence.

She was of the Baptist faith.

Mrs. Smith is survived by; one half sister, Nancy Black of Murphy IL.

She was preceded in death by; her parents, Arthur Lee and Irene Lavada Harris Black; three sisters.

Private memorial services will be held at a later date. Byrn Funeral Home in Mayfield is in charge of arrangements.

*Print Obituary*

**Sign Guestbook**

| | |
|---|---|
| **Name:** | Name (required) |
| **Location:** | Location |
| **Video:** | Link to Video (Youtube or Vimeo) |
| **Image:** | Browse... |

**Light A Candle**

SEND A CARD
Show Your Sympathy
to the Family

Send a Gift

PLAINTIFF'S EXHIBIT

H



## Equity Secured Loan Mortgage

THIS MORTGAGE (Security Instrument") is given on May 22, 1998. The Mortgagor is NANCY KAY SMITH, single person, this Security Instrument is given to Purchase Area Housing Corporation, which is organized and existing under the laws of Kentucky, and whose address is P.O. Box 588, Mayfield, Kentucky 42066("Lender"). Borrower owes Lender the principal sum of US Eight Hundred Fifty Dollars & No/Cent, $850.00. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on November . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in Graves County, Kentucky.

Lot No. 1, Block "D" of the Southland Subdivision as shown by plat of said subdivision of record in Plat Book #, Page 35 (Cabinet B, Slide 104), Graves County Court Clerk's Office.

Being the same real estate conveyed to Sandra C. Friston, a single person, by deed from the United States of America, acting through the Administrator of the Farmers Home Administration, United States Department of Agriculture, by Robert W. Letton, Acting State Director, dated October 20, 1986, and of record in Deed Book 306 Page 414, in the Graves County Clerk's Office.

"This being the same real estate as described in a mortgage granted to the United States of America, acting through the Farmers Home Administration, dated November 12, 1986, executed by Sandra C. Friston, a single person, recorded in Mortgage Book 291, Page. 627, Graves County Clerk's Office. The note has been modified by an Assumption Agreement dated May 8, 1990, and executed by the Grantees herein, namely, Nancy Smith and husband, Alex J. Smith. The said Alex J. Smith is now deceased, and by virtue of the survivorship clause contained in aforesaid deed fee simple title is subject real estate vested in his widow, Nancy Smith.

which has the address of 1001 South 12th Street, Mayfield, Kentucky, 42066 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and projects, water rights, and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the 'Property".

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non- uniform covenants with limited variation by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraph 1 shall be applied: first, the late charges due under the Note; second, to interest due; and last, to principal due.

3. Charges; liens. Borrower shall pay all taxes, assessments, charges fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender receipts evidencing the payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of the lien as agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

4. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance's shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

5. Preservation and Maintenance or Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

6. Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying

FORM-19 (4-97)                                                           1



**140**

PLAINTIFF'S EXHIBIT

I

**141**

reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 6, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 6 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

7.   **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

8.   **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of such payments.

9.   **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

10.   **Successors and Assigns Bound; Joint and Several Liability; Co-signer.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

11.   **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

12.   **Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 18. If Lender exercises this option, Lender shall take the steps specified in the second paragraph of paragraph 16.

13.   **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designated by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.   **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument and the Note are declared to be severable.

15.   **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16.   **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand of Borrower.

17.   **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days   (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in the Security Instrument; or (b) entry of a judgment enforcing this Security Instrument.

FORM-19 (4-97)                                               2

Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (c) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraphs 12 or 16.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

18. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraphs 12 and 16 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

19. **Lender in Possession.** Upon acceleration under paragraph 18 or abandonment of the Property and at any time prior to the expiration of any period of redemption following judicial sale, Lender (by judicially appointed receiver, to which Borrower consents) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

20. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

21. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument (and in any riders) executed by Borrower and recorded with it.

_____
NANCY KAY SMITH

_____
Co-signer ROBERT GLEN WORKMAN

STATE OF KENTUCKY        }

COUNTY OF GRAVES         }

This Mortgage was signed and acknowledged before me by NANCY KAY SMITH and ROBERT GLEN WORKMAN on this _22_ day of _May_, 19_98_.

_____
Notary Public, State-at-Large

My Commission expires: 1-21-2000

Prepared by: _____
Purchase Area Housing Corporation
P.O. Box 588, Hwy. 45 North
Mayfield, Kentucky 42001

FORM-19 (4-97)

STATE OF KENTUCKY
COUNTY OF GRAVES, Set

I, Glen Brune, Clerk of the County Court in and for the State and County aforesaid do certify that this instrument was lodged in my office for record on the 8 day of June 98 3:45 PM and the same and the foregoing and this certificate have been duly recorded in Book 418 page 140 in the Graves County Court Clerk's Office this 8 day of June 19 98.
GLEN BRUNE, Clerk
By _____ DC

# PURCHASE AREA HOUSING CORPORATION
## REAL ESTATE MORTGAGE AGREEMENT

**THIS MORTGAGE**, made and entered into the __25__ day of __May__, 1999 between NANCY SMITH and husband, ROBERT WORKMAN, whose mailing address is 1001 S. 12ᵗʰ STREET, KENTUCKY 42066, hereinafter referred to as "Borrower(s)", and Purchase Area Housing Corporation, 1002 Medical Drive, P.O. Box 588, Mayfield, Kentucky, 42066, hereinafter referred to as Agency.

**WITNESSETH**, that the Borrower(s), to secure the payment of one promissory note, of even date herewith in the principal sum of $ __25,000.00__ duly executed by NANCY SMITH and husband, ROBERT WORKMAN, in favor of Purchase Area Housing Corporation. This note bearing interest at the rate of 5% per annum and the first Three Thousand Dollars ($3,000.00) to be paid in monthly payments of $ 25.00. The remaining balance being a 0 % per annum, with monthly payment of $ 25.00 to follow payoff of 5% loan until note is paid in full, and to secure any renewals or extensions of future loans not to exceed a total of maximum loan amount of $ __25,000.00__ , a thirty (30) years renewable, or due upon the sale, transfer, or conveyance of the property as hereinafter provided; hereby grant, sell, and mortgage unto the Agency the following described real estate lying in GRAVES County, Kentucky, viz.:

### SEE ATTACHED PAGE

This deferred payment loan guidelines applicable to this note and mortgage are as follows; $3,000.00 of the note and mortgage amount to be paid in ( __166__ ) monthly payment of $25.00 with last month being an adjusted balance, this note beginning the date of this mortgage. The remaining balance on the note and mortgage (30 year renewable) to be paid in monthly payments of $25.00 or until paid in full (as such person(s) continue to use the real estate as their principal residence) or due when the Borrower(s) sell, convey, or otherwise transfer his or her interest in said real estate. . Payments being due on the 1ˢᵗ day of each month a $5.00 penalty being added to balance for all payments received after the 10ᵗʰ.

It is provided further that, if the owner(s) die(s) and a family member retains or inherits the home for their occupancy, and they are low income based on HUD Section 8 standards, then this original mortgage must be replaced by a new, identical, mortgage to the new owner(s) with a new term beginning on the date of transfer.

It is provided further, however, that the Purchase Area Housing Corporation can, at its discretion, if deemed to be in the best interest of the Agency, waive any of the above conditions regarding discharge of the note obligation.

The Borrower(s) agree to keep the improvements situated on the above described real estate maintained and insured against loss by fire, windstorm, and tornado, with a loss payable clause in favor of the Agency in a sum at least equal to the above indebtedness. Upon their failure to do so, the Agency reserves the right to take any appropriate action to insure the property is maintained, including early pay back of financial assistance.

The Borrower(s) agree to pay all costs, charges, expenses, and attorney's fees incurred or paid by reason of the failure of the Borrower (s), their heirs and assigns, to perform the obligations set out in the mortgage and note.

IN WITNESS WHEREOF, we have hereunto set our hands relinquishing our respective rights to curtesy or dower and homestead exemptions in and to said real estate herein mortgage.

___[signature]___
Purchase Area Housing Corporation

___Nancy Smith___
NANCY SMITH

___Robert Workman___
ROBERT WORKMAN

### ACKNOWLEDGMENT

STATE OF KENTUCKY    )
COUNTY OF GRAVES     )

I, the undersigned, notary public in and for the state and county aforesaid, hereby certify that the foregoing Real Estate Mortgage Agreement was produced to me in my county and acknowledged by NANCY SMITH and ROBERT WORKMAN before me to be their free act and deed.

Witness my hand this __25__ day of __May__, 1999.

___Phyllis Dick___          __1-21-2000__
Notary Public               My Commission Expires

PREPARED BY:
Weisenberger, Hargrove & Foster
Attorneys, at Law
P.O. Box 315
205 N. 6ᵗʰ Street
Mayfield, Kentucky 42066
FORM PAHC-24

682

PLAINTIFF'S EXHIBIT J

688

EXHIBIT "A"

Attachment Page for Mortgage
RE: Nancy Smith and husband Alex J. Smith
Purchase Area Housing Corporation

---

Lot No. 1, Block "B" of the Southland Subdivision as shown by plat of said subdivision of record in Plat Book 3, Page 35 (Cabinet B, Slide 104), Graves County Court Clerk's Office.

Being the same real estate conveyed to Nancy Smith and husband, Alex J. Smith, jointly and to the survivor of them, by deed from Sandra C. Fristoe, a single person, dated May 8, 1990, and of record in Deed Book 325, Page 571, in the Graves County Clerk's Office. The said Alex J. Smith is now deceased, having died on December 16, 1995, and pursuant to the survivorship clause contained in the aforesaid deed, fee simple title to subject real estate vested in his widow, Nancy Smith.

STATE OF KENTUCKY
COUNTY OF GRAVES, Sct.
I, Barry Kennemore, Graves County Clerk in and for the State and County aforesaid do certify that this instrument was lodged in my office for record on the 14 day of June 99 3:48 PM and the foregoing and this certificate have been duly recorded in ReM Book 438 page 682 in the Graves County Clerk's Office this the 17 day of June 19 99
Barry Kennemore, Clerk

§JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

UNITED STATES OF AMERICA

**(b)**  County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

## DEFENDANTS

NANCY BLACK, ET AL.

County of Residence of First Listed Defendant     GRAVES
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II.  BASIS OF JURISDICTION     (Place an "X" in One Box Only)

☑ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                      and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT     (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☑ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V.  ORIGIN     (Place an "X" in One Box Only)

☑ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
another district
(specify)

☐ 6   Multidistrict
Litigation

☐ 7   Appeal to District
Judge from
Magistrate
Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. SECTION 1345
Brief description of cause:
RURAL HOUSING SERVICE (RHS) f/k/a FARMERS HOME ADMINISTRATION (FmHA) FEDERAL FORECLOSURE

## VII.  REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**
$104,732.40

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☑ No

## VIII.  RELATED CASE(S)
IF ANY

(See instructions):     JUDGE                                      DOCKET NUMBER

DATE

9/1/2020

SIGNATURE OF ATTORNEY OF RECORD

s/ William F. Campbell

**FOR OFFICE USE ONLY**

RECEIPT #                AMOUNT                APPLYING IFP                JUDGE                MAG. JUDGE

# United States District Court

_____**WESTERN**_____ **DISTRICT OF** _____**KENTUCKY**_____
**AT PADUCAH**

United States of America

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**v.**

Nancy Black, et al.

**TO:**   (Name & Address of Defendant)

NANCY BLACK,
As heir of Nancy Smith, also known as
Nancy Kay Smith and Nancy Workman
1001 W. Harrison Road
Murphysboro, IL 62966-4921

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

William F. Campbell
Assistant U.S. Attorney
United States Attorney's Office
717 West Broadway
Louisville, KY 40202

an answer to the complaint which is herewith served upon you, within _____twenty-one (21)_____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

_____     _____
CLERK                                                                              DATE

_____
(BY) DEPUTY CLERK

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me [1] | Date |
|---|---|
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐   Served personally upon the defendant.  Place where served:

_____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age
and   discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐   Returned unexecuted:

_____
_____
_____

☐   Other (specify):

_____
_____
_____

---

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on   _____          _____
                            Date                                                        Signature of Server

---

[1]      **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**

# United States District Court

_____**WESTERN**_____**DISTRICT OF**_____**KENTUCKY**_____
**AT PADUCAH**

United States of America

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**v.**

Nancy Black, et al.

**TO:**   (Name & Address of Defendant)

MIKE SWAFFORD
As possible husband of Nancy Black
1001 W. Harrison Road
Murphysboro, IL 62966-4921

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

William F. Campbell
Assistant U.S. Attorney
United States Attorney's Office
717 West Broadway
Louisville, KY 40202

an answer to the complaint which is herewith served upon you, within _____twenty-one (21)_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____
**CLERK**

_____
**DATE**

_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me [1] | Date |
|---|---|
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐    Served personally upon the defendant. Place where served:

_____

☐    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and

discretion then residing therein. Name of person with whom the summons and complaint were left:

_____
_____

☐    Returned unexecuted:

_____
_____
_____

☐    Other (specify):

_____
_____
_____

## STATEMENT OF SERVICE FEES

| Travel N/A | Services | Total |
|---|---|---|

### DECLARATION OF SERVER

       I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on   _____       _____

                 Date                                 Signature of Server

---

[1]    **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**

# United States District Court

_____**WESTERN**_____ **DISTRICT OF** _____**KENTUCKY**_____
**AT PADUCAH**

United States of America

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**v.**

Nancy Black, et al.

**TO:**   (Name & Address of Defendant)

PURCHASE AREA HOUSING CORPORATION
Serve: Jennifer Beck Walker, Registered Agent
P. O. Box 588, 1002 Medical Dr.
Mayfield, KY 42066

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

William F. Campbell
Assistant U.S. Attorney
United States Attorney's Office
717 West Broadway
Louisville, KY 40202

an answer to the complaint which is herewith served upon you, within _____twenty-one (21)_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____   _____
**CLERK**                                    DATE

_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me [1] | Date |
|---|---|
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐     Served personally upon the defendant. Place where served:
_____

☐     Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and

discretion then residing therein. Name of person with whom the summons and complaint were left:
_____
_____

☐     Returned unexecuted:
_____
_____
_____

☐     Other (specify):
_____
_____
_____

---

## STATEMENT OF SERVICE FEES

| Travel N/A | Services | Total |
|---|---|---|

## DECLARATION OF SERVER

     I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on    _____      _____
                   Date                               Signature of Server

---

[1]    **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**